## No. 2099.—MARTIN HANEY v. S. C. MANNING.

All contracts and transactions between parties in aid of the Confederate struggle in the late conflict between the United States and the so-called Confederate States, are contrary to good morals and public policy, and cannot be judicially enforced. In all such cases the parties engaged will be left where their conduct has placed them.

APPEAL from the Sixth Judicial District Court, parish of St. Helena, *Ellis, J. E. J. Ellis & T. C. W. Ellis* for plaintiff and appellee. *T. G. Davidson* and *E. F. Russell* for defendant and appellant.

TALIAFERRO, J. The plaintiff sues to recover from the defendant the value of services rendered to him during the latter part of December, 1863, and the greater part of the year 1864; for the use of two horses and a mule furnished by him for defendant's benefit, in the per-

formance of the services stated, and for the value of a buggy loaned to defendant and never returned. The answer contains a general denial with the averment that the services alleged by plaintiff to have been performed by him for defendant were rendered in carrying on an illicit and illegal trade during the late war between parties residing within the opposite lines of the contending parties. He avers that plaintiff cannot recover upon his demand and prays judgment in his own behalf. The jury before whom the case was tried awarded a verdict of $520 with interest, in favor of plaintiff, and defendant appeals.

The evidence abundantly shows that the declarations of the defendant however creditable to his candor, are true in point of fact.

The plaintiff in his petition avers "that in pursuance of his employment he was required to pass, repeatedly, near the lines of the contending forces of the United States and of the Confederate States, that he was exposed to imminent danger often times—that he was engaged within the parishes of St. Helena, Livingston and East Baton Rouge in the purchase of goods and cotton, the profits of which inured to said Manning," &c.

Edward Manning, son of the defendant, sworn as a witness says: "I know that in March, 1864, my father, S. C. Manning, entered into a contract with the so-called Confederate States Government for the purpose of supplying said government with arms, ammunition, medicine, clothing, &c., for which he was to receive, in return, cotton and permits and guards to transport said cotton to points near the Federal lines. In furtherance of this object and this *alone*, the following parties were employed in and for considerations hereafter mentioned." The witness then speaks of the conditions upon which one Andrews was engaged, and further on says: "The said Martin Haney (meaning defendant) and myself started to Magnolia to report. When near there we met S. C. Manning returning from Meridian, Mississippi, who stopped us and to whom we stated our object." Witness then details the conversation that ensued. Manning said: "I have been to Meridian, seen General S. D. Lee, and arranged all matters relative to the contract. He granted me many privileges in choosing my own men," &c. Mr. Haney then said: "Can't you get me one of these papers signed in my name relieving me from reporting to the board and to conscript officers. If you will do that for me I will work in this contract the same as Ned and Andrews are working." Manning told him "yes." "After Manning, the defendant, made a trip to Liberty, Mississippi, he delivered to J. M. Andrews, Martin Haney and myself each a passport through all outposts and pickets of the Confederate forces. These papers were used by us all more than once—by Mr. Haney for his own benefit, in trading at Bayou Barbara, at Parcut's, with corn delivered and salt and flour brought back in return. The buggy was borrowed with the free consent of Haney to be used in the contract above mentioned, and was lost by Manning on Amite river, where he was captured by Federal forces, and by which he lost his own horses, and valuable medicines, &c., that were in the buggy."

Wilder, a witness, testifies that the defendant bought goods of him at Bayou Barbara for the plaintiff, and appends to his testimony bills of the goods sold to him.   These bills sufficiently disclose the character of the traffic that was going on at "Bayou Barbara."   Among the items are clothing, shoes, medicines, salt, coffee, whiskey, flour, hats, &c., &c.

This court has repeatedly announced that it will not entertain suits founded upon engagements involving a violation of law and in derogation of public morals.   The plaintiff's action in this case, grounded as it is shown to be, on engagements and acts reprobated by law, must share the fate of its predecessors of the same character in this court.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed.   It is further ordered that the plaintiff's action be dismissed at his costs in both courts.

Rehearing refused.